IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TIANBIAO LIU,<br><br>    Plaintiff,<br><br>v.<br><br>UTAH STATE UNIVERSITY, a Utah Governmental Entity, et al.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING LEAVE TO AMEND**<br><br>Case No. 1:24-cv-00087<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

   This case arises from Defendant Utah State University (USU)'s Title IX investigation and subsequent termination of Plaintiff Tianbiao Liu from his position as an associate professor.[1] Before the court is Liu's Motion for Leave to File a Second Amended Complaint.[2] For the reasons explained below, the Motion is GRANTED.

## BACKGROUND

   The following facts are drawn from the proposed Second Amended Complaint (Proposed Complaint) attached to Liu's Motion.[3]

   In 2015, Liu acquired tenure as an associate professor at USU's College of Science in the Department of Chemistry and Biochemistry.[4] As part of his professorial duties, Liu taught

---

[1] Dkt. 14, *First Amended Complaint*.

[2] Dkt. 56, *Motion for Leave to File Second Amended Complaint* (*Motion*).

[3] *See* Dkt. 56-1, *Second Amended Complaint with Jury Demand* (*Proposed Complaint*). Because USU challenges the Proposed Complaint as futile, the court accepts Liu's well-pleaded factual allegations as true and views them in the light most favorable to him. *See Beus Gilbert PLLC v. Donald L. Robertson Tr.*, 859 F. App'x 234, 237 (10th Cir. 2021) (quoting *Evans v. Diamon*, 957 F.3d 1098, 1100 (10th Cir. 2020)).

[4] *Proposed Complaint* ¶ 6.

1

classes, conducted research, and led a research group of chemistry and biochemistry doctoral students.[5] He also served as a doctorate advisor and on the graduate committee that determines whether and when a student is eligible to graduate.[6]

Around August 2018, Liu's doctoral adviser recommended Liu help a prospective student (Title IX Student) pursue her doctoral degree at USU.[7] Title IX Student enrolled at USU in Spring 2019 at Liu's invitation.[8] Title IX Student was a good student: smart, hardworking, and eager to excel.[9] However, she was also obstinate toward authority figures and struggled completing tasks she should have been able to perform based on her past education.[10] Liu did his best to help Title IX Student, and she ultimately achieved great success, including first authorship and numerous co-authorships in well-known peer-reviewed scientific journals.[11]

In October and November 2022, Title IX Student approached Liu on multiple occasions to request he recommend her for early graduation.[12] Liu did not believe she was a candidate for early graduation and informed her he would not recommend her.[13] Liu told Title IX Student she could raise the matter with the Department's head if she disagreed.[14]

On November 8, 2022, Title IX Student met with the Chemistry Department's Graduate Program Coordinator, Ms. Weatbrook.[15] Title IX Student falsely told Weatbrook that Liu had

---

[5] *Id.* ¶ 7.
[6] *Id.* ¶¶ 12–14.
[7] *Id.* ¶ 15.
[8] *Id.* ¶¶ 15–16.
[9] *Id.* ¶ 17.
[10] *Id.* ¶¶ 18–19.
[11] *Id.* ¶ 20.
[12] *Id.* ¶¶ 21, 25.
[13] *Id.* ¶¶ 22, 24, 26.
[14] *Id.* ¶ 26.
[15] *Id.* ¶ 27.

previously agreed to her graduating early and that Liu refused to extend her visa unless she agreed to not graduate early.[16] "In reality, the Title IX Student's Visa was never discussed with Dr. Liu, and he had no control or involvement in her Visa."[17] Based on these allegations, Title IX Student filed a complaint for sexual discrimination and a report of sexual misconduct and retaliation.[18] Weatbrook also submitted her own Title IX incident report of sexual discrimination against Liu.[19]

On November 16, 2022, USU removed Liu from his teaching position and informed him the Office of Equity would be conducting a Title IX investigation.[20] USU informed Liu he was strictly forbidden from (1) speaking with others affiliated with USU, except the Title IX Investigator; (2) using his USU email account or telephone; (3) entering campus; and (4) undertaking his responsibilities and privileges as a tenured professor.[21] If Liu violated any of these prohibitions, he could be terminated and his actions would be construed as retaliation against Title IX Student.[22] On December 1, 2022, USU's Title IX Coordinator served Liu with two Title IX complaints against him.[23] While Liu was on leave, USU transferred Title IX Student into a new research group, informed her she would be graduating early, and removed Liu from her graduate committee.[24]

---

[16] *Id.*

[17] *Id.* ¶ 28.

[18] *Id.* ¶ 31.

[19] *Id.* ¶ 30.

[20] *Id.* ¶ 34.

[21] *Id.* ¶ 35.

[22] *Id.* ¶ 36.

[23] *Id.* ¶ 37.

[24] *Id.* ¶ 38.

Liu takes issue with many aspects of the Title IX investigation. Liu alleges he was denied copies of evidentiary records and reports concerning the investigation.[25] He also alleges the Title IX Coordinator failed to pursue Liu's own claim for retaliation against Title IX Student for "speaking with prospective witnesses and collecting information on campus from students" concerning her allegations against Liu.[26] The investigation was also extended, and Liu alleges the Title IX Coordinator failed to inform him of the basis of the extension, which Liu later discovered was caused by Title IX Student's desire to dismiss her claims against him.[27]

Eventually, USU dismissed the discrimination complaint but amended the sexual misconduct complaint to include many of the allegations contained in the discrimination complaint.[28] Before any final hearing on the sexual misconduct claim, USU lifted many of its restrictions on Liu.[29] Liu was allowed to interact with students in his research group but was strictly and directly supervised in his communications and interactions with students and others.[30] USU then discovered Liu had complained to members of his research group regarding how the University was handling the Title IX investigation, and Liu was again barred from campus.[31] USU also informed Title IX Student of Liu's communications and encouraged her to file a separate formal complaint for retaliation, which she subsequently did.[32]

---

[25] *Id.* ¶¶ 50–53.

[26] *Id.* ¶¶ 39–40.

[27] *Id.* ¶¶ 41–42.

[28] *Id.* ¶¶ 43–44.

[29] *See id.* ¶ 54.

[30] *Id.*

[31] *Id.* ¶¶ 55–56.

[32] *Id.* ¶¶ 57–58.

A preliminary Title IX hearing was held on October 4, 2023.[33] The presiding officer informed Liu the purpose of the hearing was primarily to determine whether Liu had treated "Title IX Student differently because of her sex."[34] Shocked and confused, Liu advised the officer the discrimination complaint had been dismissed.[35] The presiding officer disagreed and told Liu the issues to be heard was whether Liu had treated Title IX Student differently based on her sex and whether Liu engaged in sexual misconduct.[36]

USU scheduled a Title IX grievance hearing for April 16, 2024.[37] On February 23, 2024, USU issued Liu a Notice of Intent to Commence Sanction Proceedings.[38] The notice explained USU's intent to sanction Dr. Liu with dismissal.[39] It set forth allegations that were all raised by Title IX Student in her complaint:[40] Liu (1) violated USU Policy 403 by rampantly and seriously mistreating graduate students through intimidation, threats, and action and creating a toxic and highly negative graduate education environment;[41] (2) mistreated international graduate students under his supervision; (3) subjected students to unreasonable hours and enforced those hours by intimidation; and (4) improperly leveraged the power imbalance between himself and his students.[42] The notice also referenced Liu's involvement in the Title IX process, his exercise of

---

[33] *Id.* ¶ 61.

[34] *Id.* ¶¶ 60–62.

[35] *Id.* ¶¶ 62, 63.

[36] *Id.* ¶¶ 64, 65.

[37] *Id.* ¶¶ 66–67.

[38] *Id.* ¶ 68.

[39] *Id.* ¶ 69.

[40] *Id.* ¶ 156.

[41] *Id.* ¶ 157. Policy 403 governed the standards of conduct that faculty members must abide by. *See id.* ¶¶ 140, 141. For example, Policy 403.2.3.3.1 stated, "Faculty members do not harass or discriminate on the bases of sex." *Id.* ¶ 182 (citation modified).

[42] *Id.* ¶¶ 158–60.

his rights under Title IX, and his contesting the allegations.[43]  Despite the Title IX grievance hearing having not yet occurred, the notice stated, "It's improbable that the many witnesses interviewed at different times in different contexts, were all untruthful in the same way so your denials of wrongdoing lack credibility."[44]  By this time, USU had removed Liu's professional profile from the University website.[45]

The Title IX grievance hearing began on April 12, 2024 and concluded on April 30, 2024.[46]  The grievance hearing panel issued a preliminary finding Liu had not violated Title IX by engaging in discrimination, sexual misconduct, or retaliation.[47]  Liu was still suspended at this time.[48]

While the grievance hearing was ongoing, on April 16, 2024, USU conducted an investigation on the Notice of Intent to Commence Sanction Proceedings.[49]  The investigation heavily relied on Title IX Student's allegations and the conclusions of the Title IX Coordinator who had conducted the investigation.[50]  A formal sanction hearing was held on May 30 and 31, 2024.[51]  During this proceeding, USU did not allow Liu's attorney to speak or question witnesses and did not provide Liu with language interpretation services.[52]  On June 29, 2024, USU dismissed Liu for violating USU Policy 403 and for violating the administrative leave

---

[43] *Id.* ¶ 70.
[44] *Id.* ¶ 71.
[45] *Id.* ¶ 72.
[46] *Id.* ¶¶ 76, 79.
[47] *Id.* ¶ 80.
[48] *Id.* ¶ 81.
[49] *Id.* ¶ 70.
[50] *Id.* ¶ 78.
[51] *Id.* ¶ 82.
[52] *Id.* ¶¶ 83–84.

prohibitions by speaking with one or more students about allegations pending before the Office of Equity.[53]

## PROCEDURAL HISTORY

On May 23, 2024, Liu filed his Complaint.[54] On September 13, 2024, Defendants moved to dismiss Liu's 42 U.S.C. § 1983 claims and breach of an implied-in-fact contract claim.[55] On July 22, 2025, the court heard oral argument and issued an oral ruling dismissing the § 1983 claims with prejudice and dismissing the contract claim without prejudice.[56] On September 18, 2025, Liu filed his Motion seeking leave to amend the Complaint to add four causes of actions under various theories of contract liability against USU.[57] The Motion is fully briefed and ripe for review.[58]

## LEGAL STANDARD

"The court should freely give leave [to amend] when justice so requires."[59] "The purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."[60] Leave to amend should be granted unless the party opposing the motion shows "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

---

[53] *Id.* ¶ 86.

[54] Dkt. 1, *Complaint*.

[55] Dkt. 26, *Defendants' Partial Motion to Dismiss for Failure to State a Claim upon Which Relief May Be Granted* (*Motion to Dismiss*). The Motion did not seek dismissal of Liu's Title IX claim against USU. *See id.*

[56] Dkt. 53, *Minute Order*; Dkt. 59, *Amended Corrected Minute Entry*.

[57] *Motion*. Initially, Liu brought this suit against USU and four of its employees. *Complaint* ¶¶ 2–6. The sole remaining defendant in the Proposed Complaint is USU. *See Proposed Complaint*.

[58] Dkt. 57, *Defendants' Response and Memorandum in Opposition to Plaintiff's Motion to File a Second Amended Complaint* (*Opposition*); Dkt. 60, *Plaintiff's Reply re: [Dkt. 56] Motion for Leave to File Second Amended Complaint*.

[59] Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

[60] *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (citation modified).

opposing party . . . [or] futility of amendment."[61]  Leave to amend is within the sound discretion of the trial court.[62]

## ANALYSIS

USU argues the Motion should be denied as untimely and futile.[63]  The court considers, and rejects, each argument in turn.

### I. The Motion to Amend Is Timely.

USU first argues the Motion is untimely.[64]  The court is not persuaded.

Lateness generally does not justify denying leave to amend.[65]  However, "untimeliness alone [can be] a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay."[66]  Here, Liu filed the Motion sixteen months after the initial Complaint and two months after the court dismissed the implied-in-fact contract claim without prejudice.[67]  USU argues amendment is untimely because Liu has no adequate explanation for the delay, and he knew or should have known the facts upon which the proposed amendments are based.[68]  USU's untimeliness argument heavily relies on the Tenth Circuit's decision in *Las Vegas Ice & Cold Storage Co. v. Far West Bank*.[69]  There, the plaintiff sought

---

[61] *Foman*, 371 U.S. at 182; *see Castleglen, Inc. v. Resol. Tr. Corp.*, 984 F.2d 1571, 1584–85 (10th Cir. 1993).

[62] *Foman*, 371 U.S. at 182; *see also Minter*, 451 F.3d at 1204 (explaining that whether to grant leave to amend "is within the discretion of the trial court" (citation omitted)).

[63] *Opposition* at 8–17.

[64] *Id.* at 8–10.

[65] *Minter*, 451 F.3d at 1205.

[66] *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (citation modified); *see also Minter*, 451 F.3d at 1205–06 (explaining the Tenth Circuit "focuses primarily on the reasons for the delay. . . . [D]enial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay." (citation modified)).

[67] *See Motion*; *Complaint*; *Minute Entry*.

[68] *Opposition* at 8–10.

[69] 893 F.2d 1182 (10th Cir. 1990); *see also Opposition* at 8–10.

leave to amend the complaint to add a claim for punitive damages.[70] The district court denied leave because "the proposed amendment was untimely," "would substantially broaden the issues for trial," and "the factual basis for the claim was known to the plaintiff at the time the complaint was filed."[71] The Tenth Circuit affirmed, holding amendment was untimely because it was sought "a year and half after the complaint was filed," nine months after summary judgment, and "only a few months before the case was scheduled for trial on the sole remaining issue."[72]

This case is distinguishable from *Las Vegas Ice & Cold Storage Co.* The Motion comes during the case's earliest stages and soon after the court granted dismissal of some claims.[73] Discovery has not been scheduled, much less conducted.[74] Indeed, the statute of limitations for the additional causes of action does not run until, at the earliest, the end of 2026.[75] Further, the Proposed Complaint does not substantially broaden the underlying dispute. It adds no new parties—and in fact reduces the number of defendants from five to one.[76] Each added cause of action is related to the implied-in-fact contract claim the court dismissed without prejudice.[77] And any delay was caused by waiting on the court's dismissal ruling.[78] "How the court would rule in relation to the individual defendants' motion, particularly where they raised qualified immunity, created a natural stall in a case's progression."[79] Accordingly, USU fails to establish

---

[70] *Las Vegas Ice & Cold Storage Co.*, 893 F.2d at 1184.

[71] *Id.*

[72] *Id.* at 1185.

[73] *See* Motion; Motion to Dismiss.

[74] *See* Motion at 3.

[75] *See id.* at 5–6 (citing Utah Code § 78B-2-307(1)).

[76] *See* Proposed Complaint.

[77] *See id.*; First Amended Complaint.

[78] Motion at 3.

[79] *Id.*

untimeliness in light of the minimal delay, limited scope of the amendments, and Liu's explanation.

### II.     Amendment Is Not Futile.

Defendants argue granting leave to amend is futile.[80]  Amendment is futile if the proposed amended pleading "would be subject to dismissal."[81]  A complaint is subject to dismissal under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted."[82]  A complaint is not subject to dismissal when it "state[s] a claim to relief that is plausible on its face," that is, when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[83]  "But specific facts are unnecessary; the claimant needs only to provide fair notice of the claim and its grounds."[84]  The court accepts all "well-pled factual allegations" as true and views "them in the light most favorable" to the non-movant.[85]

Under Utah law, the elements of a breach of contract claim are (1) the existence of a contract, (2) performance by the party seeking recovery, (3) breach by the other party, and (4) damages.[86]  USU argues Liu fails to allege (1) the existence of a written or implied-in-fact contract and (2) the existence of a breach.[87]  The court addresses each argument in turn.

---

[80] *Opposition* at 11–17.

[81] *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv'rs Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

[82] Fed. R. Civ. P. 12(b)(6).

[83] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).

[84] *Beus Gilbert*, 859 F. App'x at 237 (citation modified).

[85] *Id.* (citation modified) (quoting *Evans*, 957 F.3d at 1100).

[86] *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230–31 (Utah 2014).

[87] *Opposition* at 11–17.

### A. The Proposed Complaint Plausibly Alleges a Contract Between Liu and USU.

USU argues the Proposed Complaint fails to plausibly allege a written or implied-in-fact contract between Liu and USU. The court disagrees.

USU argues the Proposed Complaint fails to plausibly allege a written contract exists because Liu has failed to produce copies of the written instruments to which the Complaint refers.[88] However, Rule 12(b)(6) does not require attaching a written contract. Instead, the standard requires enough facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"[89]—here, that a written contract exists and Defendants breached the contract. Liu satisfies this standard.

The court finds it reasonable to infer an express contract exists from the following allegations in the Proposed Complaint: "USU and Dr. Liu entered into written instruments that acknowledged his position as a tenured faculty member."[90] "These written instruments further incorporate USU's policies, procedures, and processes that relate to faculty and tenured faculty members."[91] USU Policy 407 governed the "terms under which USU was permitted to reprimand Dr. Liu, place him on probation, suspend his employment, reduce his rank, or dismiss his employment."[92] Specifically, Policy 407 required Liu be given "written notice initiating sanction proceedings"; an opportunity "to respond in writing to the allegations"; and "a formal hearing . . ., where evidence is received and the faculty member has the opportunity to present evidence and witnesses, and to confront and cross-examine witnesses."[93] These are not

---

[88] *Id.* at 13.

[89] *Iqbal*, 556 U.S. at 678.

[90] *Proposed Complaint* ¶ 138.

[91] *Id.*

[92] *Id.* ¶ 140.

[93] *Id.* ¶ 141 (citation modified).

formulaic recitals of the elements of a breach of contract claim but rather facts that plausibly allege a contract exists.[94]

USU also argues the Proposed Complaint fails to plausibly allege an implied-in-fact contract exists.[95] This argument too is unpersuasive. "An implied contract may arise from . . . personnel policies . . . ."[96] "Personnel policies create an implied contract if the employer communicates a 'promise of employment under certain terms' to the employee and the employee performs under the offer."[97] A complaint plausibly alleges an implied contract by paraphrasing the material terms.[98] "Attaching the policy [is] unnecessary" at the pleading stage.[99]

Here, the Proposed Complaint implies Liu promised to work for USU and comply with university policies, and USU promised to employ Liu and comply with university policies. The Complaint alleges, "Dr. Liu and USU would sign a 'role statement' which itemized the respective percentage of time relative to general duties that Dr. Liu was expected to direct his professional endeavors."[100] Liu agreed to comply with USU's policies and procedures when he was originally hired.[101] During the course of Liu's employment, Liu and USU interacted with

---

[94] *See Iqbal*, 556 U.S. at 678–79.

[95] *Opposition* at 14–15.

[96] *Cabaness v. Thomas*, 232 P.3d 486, 502 (Utah 2010), *abrogated on other grounds by Gregory & Swapp, PLLC v. Kranendonk*, 424 P.3d 897 (Utah 2018).

[97] *Beus Gilbert*, 859 F. App'x at 237–38 (quoting *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1001–02 (Utah 1991)). Here, the Tenth Circuit held the complaint plausibly stated an implied-in-fact contract because the factual allegations implied the following key promises: (1) the employer promised to work for the University-employer and relinquish ownership of any discoveries, and (2) the University promised to employ the employee, support his research, and distribute income to employees making discoveries subject to the University's ownership. *Id.* at 237–39.

[98] *Id.* at 238.

[99] *Id.*

[100] *Proposed Complaint* ¶ 210.

[101] *Id.* ¶ 208.

each other in accordance with those same policies and procedures.[102] USU's policies and procedures required USU to (1) provide actual and sufficient notice before terminating a tenured professor for cause,[103] (2) hold a formal hearing where the professor is provided language interpretation services before termination,[104] and (3) weigh and view the evidence from the formal hearing with an eye towards maintaining the professor's employment.[105] Policy 407 also required USU to maintain, to the maximum extent possible, the confidentiality of all information regarding allegations of sexual harassment, and "in the event the allegations . . . are not substantiated, all reasonable steps will be taken to restore the reputation of the accused faculty member."[106] Contrary to USU's contentions, the court finds these allegations particularly and specifically identify the policies at issue.[107] Accordingly, the Proposed Complaint plausibly alleges an implied contract between USU and Liu.

### B. The Proposed Complaint Plausibly Alleges USU Committed a Breach.

Finally, USU argues Liu fails to allege a breach of contract.[108] The court disagrees. Liu alleges facts that suggest USU breached in several ways. For example, USU placed Liu on suspension without providing him written notice and without first completing the formal reprimand procedures required by Policy 407.[109] And USU decided to terminate Liu prior to the

---

[102] *Id.* ¶¶ 211–12.

[103] *Id.* ¶ 216.

[104] *Id.* ¶ 217.

[105] *Id.* ¶¶ 218–19.

[106] *Id.* ¶¶ 175–76 (quoting Policy 407).

[107] *See Opposition* at 16 ("Plaintiff then goes on to allege that Defendant breached this implied-in-fact contract by failing to abide by certain USU policies, none of which are particularly or specifically identified by Plaintiff.").

[108] *Id.* at 15 ("Plaintiff has not alleged he was ever denied compensation for his services."); *id.* at 16 ("Plaintiff's argument . . . could be best summed up as Plaintiff formed an implied-in-fact contract with Defendant which Defendant subsequently breached when Defendant violated several undefined and unidentified policies.").

[109] *Proposed Complaint* ¶¶ 143–48.

completion of the required formal procedures.[110] During the formal hearing, USU did not provide language interpretation services as required and did not allow Liu's counsel to question witnesses as required.[111] USU violated the contract's confidentiality terms by allowing Liu's colleagues and graduate students to be aware of the allegations immediately following his suspension.[112] The court finds these allegations plausibly allege USU breached the contract.

## CONCLUSION

For the reasons stated above, the court GRANTS the Motion.[113] Liu may file within seven days of this Order the Second Amended Complaint attached to the Motion.

SO ORDERED this 12th day of November, 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[110] *Id.* ¶ 220.

[111] *Id.* ¶¶ 162, 217.

[112] *Id.* ¶ 178.

[113] Dkt. 56.